# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2561

_____

Larry W. Covington

*Movant - Appellant*

v.

United States of America

*Respondent - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: September 27, 2013
Filed: January 9, 2014

_____

Before WOLLMAN, SMITH, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Larry W. Covington pleaded guilty, pursuant to a written plea agreement, to conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 1341 and 1349; mail fraud, in violation of 18 U.S.C. § 1341; theft from an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(A); and conspiracy to commit money

laundering, in violation of 18 U.S.C. § 1956(h).  The district court[1] applied § 2C1.1 of the United States Sentencing Guidelines (Guidelines) to determine Covington's base offense level and sentenced Covington to a term of 108 months' imprisonment. Covington later petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, arguing among other things that his counsel was ineffective for failing to assert during plea negotiation and at sentencing that § 2C1.1 did not apply to his 18 U.S.C. § 1341 convictions for mail fraud.  The district court denied Covington's petition but granted him a certificate of appealability on the sentencing issue.  We affirm.

I.

Covington was employed by the city of Nixa, Missouri, as Superintendent of the Street Department.   In that position, Covington supervised employees, recommended the purchases of goods, prepared purchase orders, and received delivery of goods and services.  From October 2004 to February 2009, Covington defrauded the city.  He first conspired with another person to create fake companies. Then, as Superintendent, he signed purchase vouchers confirming that the city had received goods and services from the fake companies.  The city subsequently paid for the goods that were never received and for the services that were never rendered. Covington and his coconspirator split the proceeds from the city's payments to the fake companies.

Covington was indicted on fifty-one criminal counts and two forfeiture allegations.  Covington pleaded guilty on June 1, 2010, to the four counts set forth above:  conspiracy to commit mail fraud, mail fraud, theft from an organization receiving federal funds, and conspiracy to commit money laundering.  In the written plea agreement that Covington's counsel negotiated, Covington agreed that § 2C1.1

---

[1]The Honorable Richard E. Dorr, late a United States District Judge for the Western District of Missouri.

should be used to calculate his sentence. According to the Guidelines Commentary, § 2C1.1 provides the base offense level for mail fraud "if the scheme or artifice to defraud was to deprive another of the intangible right of honest services of a public official[.]" The presentence investigation report (PSR) and the district court both applied § 2C1.1 to determine Covington's base offense level. Covington's counsel did not object to the PSR or to the application of § 2C1.1 at sentencing. At a hearing on November 16, 2010, the district court sentenced Covington to 108 months' imprisonment.

Sometime after sentencing, Covington came to believe that § 2C1.1 did not apply because his convictions did not involve honest-services fraud and that his base offense level should therefore have been calculated pursuant to § 2B1.1, the Guidelines section that applies to "offenses involving fraud or deceit[.]" Covington had waived his right to pursue a direct appeal in his plea agreement but reserved the right to challenge his sentence based on the ineffective assistance of counsel. This § 2255 action followed.

II.

Covington alleges that his trial counsel was ineffective both during plea negotiation and at sentencing. Specifically, Covington alleges that § 2C1.1 did not apply to his conduct and that his counsel should have challenged its application to his convictions at both stages of the proceeding. The standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), provides the framework for evaluating an ineffective assistance of counsel claim. Under Strickland, a defendant must show that his counsel's performance was both deficient and prejudicial. Id. at 687. That is, "the movant must show that his lawyer's performance fell below the minimum standards of professional competence (deficient performance) and that there is a reasonable probability that the result of the proceedings would have been different if his lawyer had performed competently (prejudice)." Alaniz v. United States, 351 F.3d 365, 367-

68 (8th Cir. 2003) (citing Strickland, 466 U.S. at 690, 694). "When addressing post-conviction ineffective assistance claims brought under § 2255, we review the ineffective assistance issue *de novo* and the underlying findings of fact for clear error." Tinajero-Ortiz v. United States, 635 F.3d 1100, 1103 (8th Cir. 2011) (quoting United States v. Regenos, 405 F.3d 691, 692-93 (8th Cir. 2005)).

Covington first challenges his guilty plea based on ineffective assistance of counsel during plea negotiation. He contends that his counsel was deficient by agreeing that § 2C1.1 applied to his § 1341 mail fraud convictions. Covington argues that he should have been sentenced under § 2B1.1 because § 2C1.1 applies only to § 1341 convictions involving honest-services fraud and not to generic mail fraud or embezzlement.

Assuming that counsel was deficient during plea negotiation by agreeing to the application of an improper Guidelines section, Covington has failed to show that this deficiency prejudiced him. See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000). "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Covington has not demonstrated or even alleged that had counsel informed him that § 2C1.1 was not the proper Guidelines section, he would not have pleaded guilty and would have demanded a trial. Nor has Covington shown that going to trial would have resulted in a lower sentence. Furthermore, in exchange for Covington's guilty plea, the government agreed to dismiss the remaining forty-seven counts of the indictment. See Roberson v. United States, 901 F.2d 1475, 1478-79 (8th Cir. 1990) (holding that the defendant did not demonstrate that he suffered any prejudice because, had he gone to trial, his inculpatory statements would have been used against him and because in exchange

for his guilty plea, the government agreed to dismiss the remaining counts of the indictment).  Thus, Covington's claim that his counsel was ineffective during plea negotiation fails for want of a showing of prejudice.

Covington next alleges that his counsel was ineffective at sentencing.  He contends that his counsel should have objected to the application of § 2C1.1 to his convictions, particularly in light of the Supreme Court's decision in Skilling v. United States, 130 S. Ct. 2896 (2010).[2]  According to Covington, Skilling underscored that § 2C1.1 applies to convictions under § 1341 only to the extent that they involve honest-services fraud.

Assuming, again, that Covington's counsel was deficient, Covington cannot show prejudice.  Covington's plea agreement provided that "[t]he parties agree that the applicable guideline section . . . is § 2C1.1."  Further, the plea agreement stated that as to any Guidelines issues not agreed upon in the plea agreement, "the parties are free to advocate their respective positions at the sentencing hearing."  This language implies that the parties were not free to advocate their positions with regard to any Guidelines issues agreed upon, such as the application of § 2C1.1 to Covington's convictions.  Contract law governs plea agreements, United States v. Mosley, 505 F.3d 804, 808 (8th Cir. 2007), and by objecting at sentencing to the application of § 2C1.1, counsel would have been advocating against an agreed upon term of the contract, see United States v. Thompson, 403 F.3d 1037, 1040-41 (8th Cir. 2005) (holding that the prosecutor breached the plea agreement by advocating

---

[2]In Skilling, the Supreme Court limited the definition of the "intangible right of honest services" under 18 U.S.C. § 1346 to offenses involving either bribery or kickback schemes.  130 S. Ct. at 2928, 2933.  Section 1346 does not create a separate substantive offense; it merely defines the term "scheme or artifice to defraud" contained in §§ 1341 and 1343.  See United States v. Redzic, 627 F.3d 683, 688 (8th Cir. 2010).  Skilling was decided approximately a year after Covington entered into the plea agreement and four months prior to Covington's sentencing hearing.

against the applicability of the agreed upon Guidelines section because the plea agreement stipulated the applicable Guidelines section for the offense). Accordingly, an objection by counsel to the application of § 2C1.1 would have breached the plea agreement.

A breach of the plea agreement by Covington would have released the government from its obligations under the plea agreement and would have allowed the government to proceed in any manner it desired with respect to Covington's charges. For example, the government could have pursued one or more of the forty-seven counts it agreed to dismiss. Covington cannot know how the government would have proceeded, and therefore he cannot show that his counsel's failure to object prejudiced him. Covington's argument assumes that the government would have waived its right to terminate the plea agreement, but Covington cannot establish that this would have been the case. Accordingly, because Covington has not demonstrated that he was prejudiced by his counsel's failure to object at sentencing, we need not determine whether counsel's performance was deficient.

The judgment is affirmed.

_____